FILED
JAN 2 4 2011
U.S. DISTRICT COURT
MARTINSBURG, WV 25401

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

BRANDON B. NUTTER,
MARSHA K. DAWSON,
and CITY OF PIEDMONT,

        Plaintiffs,

v.                                            CIVIL ACTION NO. 3:10-CV-63
                                            (BAILEY)

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, a Minnesota Corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pending before this Court are cross Motions for Summary Judgment by defendant St. Paul Fire and Marine Insurance Company [Doc. 13], filed November 30, 2010, and by plaintiffs Brandon B. Nutter and Marsha K. Dawson [Doc. 15], filed December 1, 2010. Both parties filed their respective responses to the Motions, and the defendant filed its reply. Having been fully briefed, this matter is now ripe for adjudication. For the reasons stated below, the defendant's Motion is **GRANTED**, and the plaintiffs' Motion is **DENIED**.

### I. Statement of Facts and Procedural History

This action for declaratory judgment arises from the denial of coverage by St. Paul to its insured, City of Piedmont, in a civil action in the Circuit Court of Mineral County styled *Brandon B. Nutter and Marsha K. Dawson v. Lumber & Things, Inc., et al.*, Civil Action No. 06-C-157.

On May 26, 2010, defendant St. Paul Fire and Marine Insurance Company ("St.

Paul") was served a copy of the Summons and Complaint for declaratory relief in the Circuit Court. On June 23, 2010, St. Paul removed the Declaratory Judgment Action to this Court pursuant to 28 U.S.C. §§1441 and 1446. On October 20, 2010, by Order of this Court [Doc. 12] the City of Piedmont was subsequently added as a party plaintiff pursuant to Rule 19 fo the Federal Rules of Civil Procedure.

The underlying Amended Complaint arose out of injuries sustained by Brandon B. Nutter during a fireworks display at an event called the "Piedmont Backstreet Community Festival 2005." (Am. Cmpl. at ¶ 11). The fireworks display was conducted on July 2, 2005. It is alleged the fireworks were purchased and sponsored by John Amoruso, Sr. The fireworks display "consisted of several tubes sticking out of the ground and several crates of shells. The shells were balls of explosives attached to long fuses. To set off this type of shell, the fuse is lit and the shell is then lowered by fuse into the tube, from which it then launches." (Am. Cmpl. at ¶ 16).

The plaintiff, Brandon Nutter, was permitted to help set off some of the fireworks. While he was doing this, "the shell exploded in the tube with Brandon Nutter standing right beside it." (Am. Cmpl. at ¶ 22). As a result of the explosion, Brandon Nutter sustained severe injuries including burns over much of his body, two detached retinas, severing of the optic nerve in his right eye, a punctured right ear drum, and re-aggravated back problems which had been previously broken. (Am. Cmpl. at ¶ 27).

The underlying Amended Complaint against the City of Piedmont contains several counts against the City. Count I alleges that the City of Piedmont was negligent in the following manner: It allowed or condoned a fireworks display without requiring the proper permit as required in W. Va. Code § 29-3-24; it did not require the parties conducting the

2

fireworks display to obtain approval from local police and fire authorities as required by W. Va. Code § 29-3-24; employees and officers of the City of Piedmont did not require the parties conducting the fireworks display to seek and obtain approval from the State Fire Marshall; it did not require the parties conducting the fireworks display to be competent operators, licenced or certified as to competency by the State Fire Marshall as required by W. Va. Code § 29-3-24; and it did not require the fireworks display to be of such composition and character and to be located, discharged or fired, as not to be hazardous or dangerous to people as required by W. Va. Code § 29-3-24. (Am. Cmpl. at ¶¶ 52-56).

Count II contains allegations against Lumber & Things, Inc., a defendant in the underlying action, which allegedly manufactured the tubes utilized in the fireworks display. Count III of the underlying Amended Complaint alleges that all the defendants, including the City of Piedmont, were negligent in allowing a fifteen year-old boy to operate a dangerous and unlicensed fireworks display. Count VI of the underlying Amended Complaint contains premises liability allegations against the City of Piedmont alleging that the land upon which Brandon Nutter was injured belongs to the City of Piedmont and that the City had breached its duty to Brandon Nutter as an invitee upon its premises. (Am. Cmpl. at ¶¶ 73-74).

The City of Piedmont filed a Motion to Dismiss in the underlying action asserting that the Amended Complaint fails to state a claim upon which relief may be granted. The basis for the Motion is the City's contention that the fireworks display was not in the city limits of the City of Piedmont. No ruling has been made on the City of Piedmont's Motion to Dismiss.

St. Paul initially investigated and denied coverage for the Nutter claim by letter dated

3

July 15, 2005 [Doc. 14, Ex. A]. When suit was filed against the City of Piedmont, another denial letter was issued on February 22, 2007, to the City of Piedmont indicating that there is no coverage under the Public Entity General Liability Coverage Form based upon a Public Sector Services Excluded Operations and Premises Endorsement which excludes coverage for injury or damages or medical expenses that result from fireworks displays or exhibitions [Doc. 14, Ex. B].

The City of Piedmont has never challenged St. Paul's denial of coverage and is defending itself in the underlying action. The underlying civil action remains pending against the City of Piedmont.

## II. Applicable Law

A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[2] Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they

---

[1] Fed. R. Civ. P. 56 (c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

4

may reasonably be resolved in favor of either party."[3]

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."[4] That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.[5] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[6]

### B. Choice of Law

Because this Court is a federal court sitting in diversity, it must apply West Virginia substantive law to determine whether the plaintiff can establish the necessary causal connection in this case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Where state law is unclear on an issue, this Court must interpret the law as it appears that the West Virginia Supreme Court of Appeals would. See *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999). Here, the Court of Appeals has not definitively ruled on the specific issue before this Court; however, it does provide sufficient guidance for this Court to surmise how it would rule.

---

[3] *Anderson*, 477 U.S. at 250.

[4] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[5] Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248.

[6] *Anderson*, 477 U.S. at 249 (citations omitted).

## III. Discussion

### A.

"[I]f an exclusion is written to eliminate coverage for injuries **arising out of** or occurring by reason of certain events or causes, there should not be coverage regardless of the theory of liability alleged against an insured." Windt, Insurance Claims and Disputes 11:22A Arising out of Exclusions (5th ed. 2010) (emphasis added). The operative language of the subject exclusion is "injury . . . that **result[s] from** . . . [f]ireworks displays or exhibitions." (emphasis added). Case law has found the terms "arising from" and "resulting from" to be synonymous. These courts have similarly upheld such exclusions if the injury is causally connected to "the excluded operation." *See Secura Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320 (Ct. App. Minn. 2008); *American Comm. Ins. Co. v. Porto*, 811 A.2d 1185 (R.I. 2002); *Paradigm v. Texas Richmond Corp.*, 942 S.W.2d 645 (Tex. App. 1997); *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201 (Ct. App. 2d 1998); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. United States Liquids, Inc.*, 271 F.Supp.2d 926 (S.D. Tex. 2003). Although the West Virginia Supreme Court of Appeals has not definitively ruled on this issue, it has noted the *absence* of the broad language, "arising out of," in exclusions:

> "We find it does not [foreclose coverage] in the face of the broad liability coverage and the **lack of any expansive language** such as used in other homeowners policies where the language in the automobile exclusion contains the phrase '**arising out of**' the ownership, maintenance, or use of the vehicle."

6

***Huggins v. Tri-County Bonding Co.***, 175 W. Va. 643, 337 S.E.2d 12, 17 (1985) (emphasis added).

Additionally, "in insurance cases, the concern is ordinarily not with the question of 'culpability' . . . but only with the nature of the injury and how it physically happened, which must then be compared with the language of the insurance policy to determine whether this type of injury from this type of physical cause was intended to be covered by the policy." 7 Couch on Ins., 3d § 101:41 at 101-131-32. "In essence, when a claim for damages is grounded on an insurance contract, the liability of the insurer depends upon whether the damages sustained were a result of a risk or hazard against which the insured was covered by the policy." Id. In this case, the nature of the injury and how it physically happened was a direct result of a tragic fireworks explosion, which was part of a fireworks display. Looking to the St. Paul insurance policy, this is precisely the type of risk or hazard that was specifically excluded.

The plaintiffs have set forth several theories of liability against the City of Piedmont in their Motion for Summary Judgment. While these should make for interesting issues for the circuit court, this Court does not find them to be dispositive in the instant action for declaratory judgment. Questions of liability arising from such things as: whether the defendants obtained proper approval; whether the fireworks display was within city limits; whether they obtained proper permits; whether they complied with statutory requirements for fireworks displays; and issues of premises liability, operators' licenses, and the like are simply not before this Court. Rather, this Court is satisfied that neither party disputes that while setting off fireworks, Brandon Nutter was injured when "[t]he shell exploded in the tube with [him] standing right beside it." (Am. Cmpl. ¶ 22).

B.

Concerning general principles of construing the provisions of an insurance policy, the West Virginia Supreme Court of Appeals has indicated that:

> "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syllabus Point 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by National Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970). Concerning whether terms in an insurance policy are ambiguous, this Court has explained that "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syllabus Point 1, *Prete v. Merchants Property Ins. Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976). However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley Co. Pub. Serv. v. Vitro Corp.*, 152 W.Va. 252, 162 S.E.2d 189 (1968). If a court determines that a policy provision is ambiguous, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guaranty Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). Finally, "included in the consideration of whether the insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an

8

interpretation that the claim may be covered by the terms of the insurance policies." Syllabus Point 3, in part, *Bruceton Bank v. U.S.F. & G. Ins.*, 199 W.Va. 548, 486 S.E.2d 19 (1997).

*Mylan Labs., Inc. v. American Motorists Ins. Co.*, 226 W. Va. 307, 700 S.E.2d 518 (2010).

At the outset, this Court finds that the subject provision in this insurance policy is clear and unambiguous. As such, this Court will not attempt to construe or interpret the same, but will give full effect to the plain meaning intended. *See Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714. Nor does this Court find the facts to be in dispute; thus, the determination of proper coverage, or lack thereof, is a question of law properly before this Court on summary judgment. *See Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002).

The relevant portion of the policy reads as follows:

**PUBLIC SECTOR SERVICES**
**EXCLUDED OPERATIONS AND PREMISES ENDORSEMENT**

This endorsement changes your Public Entity General Liability Protection.

**How Coverage Is Changed**

The following is added to the Exclusions - What This Agreement Won't Cover section. This change excludes coverage.

**Excluded operations and premises.** We won't cover injury or damage or medical expenses that result from any of the following operations, including the ownership, maintenance, or use of any premises in those operations, which are indicated by an (X).

* * *

(X) Fireworks displays or exhibitions

Plaintiffs argue that "West Virginia jurisprudence imposes a duty to make exclusionary language conspicuous, plain, and clear, and further imposes a duty to bring such exclusions to the attention of the insured." *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). Neither the insured, City of Piedmont, nor the plaintiffs have set forth any such evidence that the subject exclusion was not brought to Piedmont's attention. Indeed, Piedmont has neither challenged the denial of coverage, nor has it joined in the plaintiffs' motion or responded in opposition to the defendant's motion for summary judgment. While this Court does not find this to be dispositive, neither can it draw any inferences concerning the City of Piedmont's knowledge.

The plaintiffs further assert that the exclusion must be placed "in such a fashion as to make obvious [its] relationship to other policy terms . . .." *Id.* In this case, the doctrine of "reasonable expectations" argument is unavailing. This doctrine is the exception to the general rule, allowing courts "in limited circumstances" to nullify policy terms "even in cases where the policy language is clear and unambiguous." *Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W. Va. 748, 755, 613 S.E.2d 896, 903 (2005). Such application has relaxed the rule that a party to a contract has a duty to read the instrument by honoring objectively reasonable expectations "even though painstaking study of the policy provisions would have negated expectations." *McMahon*, 177 W.Va. at 741 n. 6.

In reviewing the policy, "[courts] must first consider the conspicuity of the exclusionary language. The term 'conspicuous' is defined as 'clearly visible or obvious . . . [w]hether a printed clause is conspicuous as a matter of law . . . depends on the size and style of the typeface.' *Black's Law Dictionary* 329 (8th ed. 2004)." *Luikart*, 216 W.

Va. at 753, 613 S.E.2d at 901. In *Luikart*, much like this case, the policy included a portion entitled "Schedule of Forms and Endorsements" which served as a table of contents. The subject exclusion in that case, also like this case, was set apart and separately numbered within the document. In *Luikart*, the West Virginia Supreme Court of Appeals found that "while the document as a whole was large, there was sufficient guidance to locate the exclusions." *Id.* Further, once located, "the exclusionary language was set apart from the other language by an emboldened subheading entitled 'Exclusions.'" *Id.* The Court of Appeals found, therefore, that "the only conclusion that [it could] reach[ ] . . . [was] that it was, indeed, conspicuous." *Id.*

While the plaintiffs in this case are correct that the subject exclusion is not listed in the section entitled "Exclusions - What this Agreement Won't Cover," on pages 13-30 of the policy's "Public Entity General Liability Protection," the exclusion *is* clearly stated and closely placed two pages thereafter. It is contained on its own page entitled "Public Sector Services Excluded Operations and Premises Endorsement." The sole purpose the endorsement serves is to reflect changes to the policy's Public Entity General Liability Protection. Directly below the title "How Coverage is Changed," the endorsement clearly explains: "The following is added to the Exclusions - What This Agreement Won't Cover section." Virtually every major section in the policy is followed by such "endorsement" pages stating changes to each respective section. To further direct the insured's attention to the exclusions, the Policy Form List, akin to a table of contents, like the "Schedule of Forms and Endorsements" in *Luikart*, lists all the forms in the order in which they appear in the policy.

This Court has thoroughly reviewed the policy, and while it is a lengthy document, there exists no misconception, deception, or intentional concealment of the subject exclusion. Neither is the endorsement page buried within the policy or contained in some "fine print," nor would it require of the insured a "painstaking study of the policy" to uncover it. See **Luikart**, 216 W. Va. at 755, 613 S.E.2d at 903. Rather, this Court finds that the subject fireworks displays exclusion is well within the unambiguous, four corners of the the St. Paul policy. Therefore, this Court holds that the exclusion shall apply, and St. Paul will not be responsible for indemnification for any judgment which may be awarded against the City of Piedmont in Civil Action No. 06-C-157.

## IV. Conclusion

For the reasons stated above, the defendant's Motion for Summary Judgment **[Doc. 13]** is **GRANTED**, and the plaintiffs' Motion for Summary Judgment **[Doc. 15]** is **DENIED**. Accordingly, this civil action is hereby **DISMISSED** and **STRICKEN** from the docket. The Clerk is **DIRECTED** to enter judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** January 24, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE